IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
No. 1:20 cv 202 MR WCM

| | |
|---|---|
| **STEPHANIE GODBOLD**, by and through her Guardian, Teresa Holloway, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| **CHEROKEE COUNTY**,<br>**SCOTT LINDSAY**, in his official capacity as DSS attorney for Cherokee County,<br>**SCOTT LINDSAY**, in his individual capacity,<br>**CINDY PALMER**, in her official capacity as Director of DSS in Cherokee County,<br>**CINDY PALMER**, in her individual capacity,<br>**DONNA CRAWFORD**, in her official capacity as Director of DSS for Cherokee County, **DONNA CRAWFORD**, in her individual capacity, | )  **MEMORANDUM AND**<br>)  **RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Before the Court is a Motion to Dismiss (Doc. 3) filed by Defendants Cherokee County, Scott Lindsay ("Lindsay") in his official and individual capacities, Cindy Palmer ("Palmer") in her official and individual capacities, and Donna Crawford ("Crawford") in her official capacity which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).

The Motion to Dismiss is fully briefed and ripe for ruling.

1

I.   Procedural Background

On June 25, 2020, Plaintiff, by and through her guardian, filed a Complaint in North Carolina state court against Cherokee County as well as Lindsay, Palmer, and Crawford in both their individual and official capacities. Doc. 1-1.  The case was removed to this court on July 27, 2020, Doc. 1, and Plaintiff filed an Amended Complaint that same day.  Doc. 2.[1]

II.  Factual Background[2]

Plaintiff's claims arise out of Defendants' use of a Custody and Visitation Agreement (the "CVA") "to remove [Plaintiff's] daughter from her."  Doc. 1-1 ¶ 1.

Plaintiff alleges that she and her daughter "lived together as mother and child for six years or more at Gwenmont housing project" and that Plaintiff "eventually asked for Cherokee County DSS assistance as she was having

---

[1] Plaintiff's Amended Complaint "incorporates the entire prior complaint as if fully set forth" therein and then sets forth additional allegations.  See Doc. 2.

[2] Plaintiff attached the following documents to her original Complaint: (1) the CVA (Doc. 1-1 at 60-61); (2) a March 14, 2018 state court Judgment (Doc. 1-1 at 62-68); and (3) a December 20, 2017 letter signed by Lisa Cauley, Deputy Director of DSS Child Welfare Services.  Doc. 1-1 at 69.  In support of the Motion to Dismiss, Defendants have submitted an Application for Letters of Guardianship (Doc. 4-2) and an Order on the Application for Guardianship appointing Teresa E. Holloway as Plaintiff's general guardian.  Doc. 4-3.  The Court may consider these documents for purposes of the instant Motion to Dismiss.  See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

trouble managing her daughter's behavior." Doc. 1-1 ¶¶ 126 & 127. "In 2009 or 2010, Cherokee County DSS employees opened an investigation into whether her daughter was an abused, neglected, or dependent juvenile," Doc. 1-1 ¶ 128, and Plaintiff attended a meeting at a DSS facility in Cherokee County in January of 2010. Doc. 1-1 ¶ 129. Plaintiff contends that during the meeting, she was coerced into signing the CVA. Doc. 1-1 ¶¶ 129-133. The CVA is dated January 27, 2010. Doc. 1-1 at 60.

Plaintiff additionally contends that she has "severe intellectual disabilities," and that a guardian was appointed for her in 2010. Doc. 1-1 ¶ 125. In particular, based on an Application for Letters of Guardianship, an Interim Order appointing a guardian of Plaintiff's person was signed on March 23, 2010, approximately two months after execution of the CVA. Doc. 4-3 at 2.

Plaintiff alleges that she "was incompetent and under a disability at the time she was presented with and signed the CVA," and that she did not "understand that the CVA purported to permanently deprive her of custody of her child." Doc. 2 ¶ 5; Doc. 1-1 ¶ 136. Plaintiff also contends that she "did not have counsel, was not given court-appointed counsel, was not informed of her right to have counsel, and was not given an opportunity to seek legal counsel when presented with the CVA," Doc. 1-1 ¶ 137, and that her "procedural rights to due process" were violated "because Defendants' coercive and unlawful use

3

of the CVA deprived [her] of a fair and meaningful opportunity to be heard by a court prior to losing her constitutional parental rights." Doc. 1-1 ¶ 140.

Plaintiff alleges that in a separate state court action CVAs such as the one used here were declared unlawful. Doc. 1-1 ¶ 146.[3] Further, Plaintiff contends that the "illegality of the CVAs" did not begin to come to light until December of 2017, Doc. 2 ¶ 10, and that "Defendants' course of deceptive and illegal actions were revealed to be unlawful, at the earliest, when Judge Sellers declared all CVAs to be unconstitutional and illegal in March of 2018." Doc. 2 ¶ 7.

On June 25, 2020, Plaintiff filed suit asserting claims of negligence; gross negligence; negligent hiring, retention, and supervision; grossly negligent hiring, retention, and supervision; a claim pursuant to 42 U.S.C. § 1983 for alleged violations of the "First, Fourth and Fourteenth Amendments to the Constitution of the United States;" a Monell claim against Cherokee County; a claim asserting *respondeat superior* (with respect to the state law claims); as well as claims for civil obstruction of justice, punitive damages, and attorneys' fees.

---

[3] Plaintiff attaches a state district court Declaratory Judgment signed by the Honorable Tessa Sellers on March 14, 2018. Therein, Judge Sellers found that the CVA at issue in that case was illegal and void *ab initio*. Doc. 1-1 at 64.

## III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Consumeraffairs.com, 591 F.3d at 255.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Analysis

By the instant Motion to Dismiss, Defendants seek dismissal of Plaintiff's claims against Crawford in her official capacity and dismissal of the remainder of Plaintiff's claims based on the statute of limitations or, alternatively, dismissal of Plaintiff's remaining state law claims based on the statute of repose.

### A. Claims Against Crawford in her Official Capacity

Defendants move for the dismissal of Plaintiff's claims against Crawford in her official capacity because Crawford was not the director of Cherokee County DSS when the CVA was signed. Doc. 4 at 11. On November 20, 2020, Plaintiff filed a Stipulation of Dismissal "of all claims in the above captioned action against Defendant Donna Crawford in her individual and official capacities." Doc. 11 at 1. Therefore, the undersigned will recommend that the Motion to Dismiss be denied as moot to the extent the Motion seeks dismissal of Plaintiff's claims against Crawford in her official capacity.

### B. Statute of Limitations

#### 1. Standard of Review

The statute of limitations "is an affirmative defense, which can be the basis of a motion to dismiss under Rule 12(b)(6)." Dickinson v. Univ. of N. Carolina, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (citing Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005)). "However, since a Rule 12(b)(6)

6

motion aims to test the sufficiency of the complaint, and the burden of proving an affirmative defense rests with a defendant, dismissal under Rule 12(b)(6) based on the statute of limitations occurs in 'relatively rare circumstances'" and "all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" Id. (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)).

### 2. Accrual of Plaintiff's Claims

The parties agree that a three-year statute of limitations applies to all of Plaintiff's claims. Doc. 4 at 6; Doc. 5 at 6; see also Wallace v. Kato, 549 U.S. 384, 387 (2007); Fayemi v. Offerman, 99 Fed. Appx. 480, 2004 WL 1205715, at * 1 (4th Cir. 2004) (unpubl.) (with respect to § 1983 claims, "federal courts apply the forum state's 'most analogous' statute of limitations, generally the statute applicable to personal injury actions.").

They disagree, however, as to when Plaintiff's claims accrued.

#### a. The Continuing Wrong Doctrine

One argument Plaintiff makes is that "Defendants continue to violate Plaintiff's rights to this very day" such that the statute of limitations applicable to her claims has not yet begun to run. Doc. 5 at 11-17.

The "continuing-wrong doctrine is an exception to the general rule that a state-law claim accrues when the right to maintain a suit arises. 'Under the continuing wrong doctrine, the statute of limitations does not start running

7

until the violative act ceases.'" Perry v. Pamlico County, 88 F.Supp.3d 518, 530 (E.D.N.C. 2015) (quoting Marzec v. Nye, 203 N.C.App. 88, 94, 690 S.E.2d 537, 542 (2010) (quotations and citations omitted)); see also A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (analyzing whether continuing violation doctrine applied to plaintiff's ADA, § 1983, and equal-protection claims).

"'A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.'" Perry, 88 F.Supp.3d at 530 (quoting Williams v. Blue Cross Blue Shield of North Carolina, 357 N.C. 170, 179, 581 S.E.2d 415 (2003)); see also A Society Without a Name, 655 F.3d at 348 ("But continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation.").

Here, the violation alleged by Plaintiff is Defendants' use of the CVA to deprive Plaintiff of her parental rights without judicial oversight. The continuing wrong doctrine, though, does not appear applicable to this scenario. While Plaintiff may have experienced numerous "continual ill effects" from losing custody of her child, the act of using the CVA to separate Plaintiff and her child is a single wrong that occurred on the date the CVA was signed. See Perry, 88 F.Supp.3d at 531 ("The continuation of nonsecure custody was a continued effect from the original removal and not a separate or unexpected

deprivation beginning the limitations period anew."); Moua v. Alexander County, No. 5:09cv19, 2012 WL 252648, at * 11 (W.D.N.C. Jan. 26, 2012) (rejecting continuing wrong theory in the context of plaintiff's claims arising out of temporary removal of parent's custody of children); Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007); Williams v. Savory, 87 F.Supp.3d 437, 454 (S.D.N.Y. 2015); Kovacic v. Cuyahoga County Dept of Children and Family Services, 606 F.3d 301, 308 (6th Cir. 2010).

Therefore, the undersigned is not persuaded that the continuing wrong doctrine applies to Plaintiff's claims.

### b. Statutes of Limitation That May Apply

The parties' leading arguments reference limitations periods under two separate sections of North Carolina General Statute § 1-52.

Defendants assert that N.C.G.S. § 1-52(5) applies to Plaintiff's state law claims. That section provides a three-year statute of limitations for "any other injury to the person…not arising on contract and not hereafter enumerated…." Under North Carolina common law, this three-year period generally begins to run "at the time the injury occurs[,]…even when the injured party is unaware that the injury exists." Pembee Mfg. Corp. v. Cape Fear Const. Co., 313 N.C. 488, 492, 329 S.E.2d 350, 353 (1985) (citations omitted). Defendants argue therefore that the three-year period for Plaintiff to bring her claims began to run on January 27, 2010, the date of the CVA. See Perry, 88 F.Supp.3d at 530

9

("Perry knew or had reason to know of her injury when DSS removed her children from her custody and care on September 28, 2009, the day the wrong giving rise to the right to bring suit was committed."); see also Williams, 87 F.Supp.3d at 454-455 (for purposes of statute of limitations, plaintiff "experienced the removal of her children from her custody on the day it happened," and finding "[i]n such circumstances, courts have held that the limitations period began to run on the date a parent's children were removed.") (collecting cases); Kovacic, 606 F.3d at 307 (civil rights claims based on removal of plaintiff's children accrue when child is removed from the parent).

In contrast, Plaintiff argues that N.C.G.S. § 1-52(9) applies to her state law claims. That section provides that "[f]or relief on the grounds of fraud or mistake, the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." See also Jackson v. Minnesota Life Ins. Co., 275 F.Supp.3d 712, 722 (E.D.N.C. March 8, 2017) (the limitations period for fraud or mistake accrues on the date the plaintiff "actually discovered the alleged fraud, or reasonably should have discovered it in the exercise of due diligence.") (citing Vail v. Vail, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951); Carlisle v. Keith, 169 N.C.App. 674, 683, 614 S.E.2d 542, 548 (2005)). Plaintiff asserts that she "could not have been aware that Defendants' conduct was wrong until Judge Sellers ruled that all CVAs were unconstitutional on March 14, 2018." Doc. 5 at 8.

However, in light of Plaintiff's allegations regarding her disability which could toll the running of the limitations period, as discussed below, it is not necessary for purposes of the Motion to Dismiss to determine which of these provisions applies to Plaintiff's state law claims.[4]

### 3. Tolling of the Statute of Limitations

The parties also disagree as to whether the statute of limitations on Plaintiff's claims was tolled.

Defendants argue that, though Plaintiff became disabled when an application was submitted on March 23, 2010 for the appointment of a guardian, she was not disabled two months earlier when the CVA was signed, and therefore the statute of limitations began to run on January 27, 2010 and was not tolled by her subsequent disability.

Plaintiff contends that she was disabled on the date the CVA was signed and that her subsequent guardianship confirms that disability.

---

[4] With respect to Plaintiff's federal claims, "[a]lthough state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (citing Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). A federal claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir.1995) (citing United States v. Kubrick, 444 U.S. 111, 122-24 (1979)). The parties take similar positions regarding the accrual date of the federal claims, i.e., Plaintiff contends that the applicable statute of limitations could not begin to run until the state court ruling in 2018, while Defendants argue that this period began to run on the date the CVA was signed.

N.C.G.S. § 1-17(a) provides, in pertinent part, that a "person entitled to commence an action who is under a disability at the time the cause of action accrued may bring his or her action within the time limited in this Subchapter, after the disability is removed[.]" See also Leardini v. Charlotte-Mecklenburg Board of Education, No. 3:09-cv-264-GCM, 2011 WL 1234743, at *2 (W.D.N.C. March 29, 2011) ("The Supreme Court has been clear that both the state's statute of limitations and the state's 'provisions regarding tolling, revival and questions of application' should be applied to § 1983 actions."); Shreve v. Jones, No. 5:19-cv-178-FL, 2020 WL 3076603 (E.D.N.C. June 10, 2020) (applying North Carolina disability tolling rules to a plaintiff's § 1983 claims).

"For tolling in this manner, a disability must exist when the right of action accrues, because 'when the statute of limitations has begun to run, no subsequent disability will interfere with it.'" Lee v. City of Fayetteville, No. 5:16cv759, 2017 WL 2274970, at *7 (E.D.N.C. May 24, 2017) (quoting Battle v. Battle, 235 N.C. 499, 502, 70 S.E.2d 492, 494 (1952)).

For the purposes of N.C.G.S. § 1-17(a), "a person is under a disability if the person ... is incompetent as defined in G.S. 35A-1101(7) or (8)." N.C.G.S. § 1-17(a)(3). N.C.G.S. § 35A-1101(7) provides that an "[i]ncompetent adult"

> means an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness,

12

> mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

A formal "adjudication of incompetency under Chapter 35A" is not required in order to demonstrate a disability needed to toll the statute of limitations. Ragsdale v. Whitley, 257 N.C. App. 336, 341, 809 S.E.2d 368, 371 (2018) ("If a person meets the statutory definition of an "incompetent adult" under N.C. Gen. Stat. § 35A-1101(7), the applicable statute of limitations is tolled until the disability is removed. The General Assembly made no finding that an adjudication of incompetency under Chapter 35A was required in order to toll the statute of limitations.").

In her Complaint, Plaintiff alleges that she "has severe intellectual disabilities" and that she was disabled at the time she signed the CVA on January 27, 2010. Doc. 2 ¶ 5; Doc. 1-1 at 60-61. The record also indicates that Ms. Holloway was appointed as the guardian of Plaintiff's person approximately two (2) months later, on March 23, 2010.

Given the nature of Plaintiff's mental challenges, and the temporal proximity of Ms. Holloway's appointment to the execution of the CVA, Plaintiff has sufficiently alleged that she was disabled for the purposes of N.C.G.S. § 1-17(a) at the time she signed the CVA on January 27, 2010. See Soderlund v. North Carolina School of the Arts, 125 N.C.App. 386, 481 S.E.2d 336 (1997) (reversing trial court's grant of Rule 12(b)(6) motion to dismiss plaintiff's

13

claims as barred by the statute of limitations because "defendants had sufficient notice from the allegations in plaintiff's complaint that he may have been prevented from filing his claims due to mental disability" because plaintiff "alleged that he suffered several mental breakdowns, that he was diagnosed with PTSD, and that due to his mental illness, he was rendered incompetent…").

Accordingly, if, as Defendants argue, N.C.G.S. § 1-52(5) applies to Plaintiff's claims such that they accrued on January 27, 2010 when the CVA was signed, because Plaintiff has alleged sufficiently that she was disabled on that date, the statute of limitations would not have begun to run at that time. The statute could have started to run at a later time if Plaintiff's disability was removed, but the current record does not provide sufficient information on which to base such a finding; though the previous guardianship order was an "Interim" order, Doc. 4-3 at 2, Plaintiff appears here through her guardian and there is no direct allegation in the Complaint that Plaintiff's disability was subsequently removed.

Similarly, if, as Plaintiff argues, N.C.G.S. § 1-52(9) applies to Plaintiff's claims, in order to determine if the statute of limitations has run, the Court must determine when the claims accrued—that is, when Plaintiff knew or should have known of the alleged fraudulent conduct by Defendants—and whether Plaintiff's disability, which existed as of January 27, 2010, had been

14

removed by that time. These findings could be dispositive. For example, if the statute of limitations began to run in March of 2018 as Plaintiff argues, her Complaint would be timely as it was filed within three years of that date. However, if Plaintiff's disability was removed sometime prior to that date, and if her claims also accrued before that date, her claims could be time-barred.

In sum, in light of the questions regarding Plaintiff's disability, "all facts necessary" to determine whether Plaintiff's claims are timely do not "clearly appear 'on the face of the complaint.'" Dickinson, 91 F. Supp. 3d at 763. Therefore, the undersigned will recommend that, to the extent Defendants seek dismissal based on the statute of limitations, the Motion to Dismiss be denied.

### C. Statute of Repose

Alternatively, Defendants contend that Plaintiff's state law claims are barred by N.C.G.S. § 1-52(16), which sets forth a ten-year statute of repose.[5]

The North Carolina Supreme Court has explained that "statutes of repose are intended to mitigate the risk of inherently uncertain and potentially limitless legal exposure" and therefore "such a statute's limitation period is initiated by the defendant's last act or omission that at some later point gives

---

[5] Defendants recognize that the statute of repose does not apply to Plaintiff's federal claims. Doc. 4 at 9. See Chapman v. Rhoney, No. 1:10cv258, 2012 WL 1944863, at * 3 (W.D.N.C. May 30, 2012) (explaining that "federal courts have declined to apply statutes of repose to civil rights actions.").

15

rise to the plaintiff's cause of action." Christie v. Hartley Construction, Inc., 367 N.C. 534, 539, 766 S.E.2d 283, 287 (2014) (internal quotations omitted). Accordingly, statutes of repose "function as unyielding and absolute barrier[s] to litigation, are substantive in nature, and are not subject to equitable doctrines." Id. (internal citations and quotations omitted).

N.C.G.S. § 1-52(16) provides, in pertinent part:

> Unless otherwise provided by law, for personal injury…the cause of action…shall not accrue until bodily harm to the claimant…becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. …[N]o cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

As a threshold matter, it is not clear that § 1-52(16) is applicable to Plaintiff's claims. In Stahle v. CTS Corp., 817 F.3d 96, 108 (4th Cir. 2016), the Fourth Circuit, applying North Carolina law, explained that N.C.G.S. § 1-52(5) "is the pertinent statute of limitation for civil actions for an 'injury to the person'" and that § 1-52(16) "is an accrual provision that applies to a subset of those actions, namely those in which the harm is not immediately apparent, but rather 'becomes apparent' at some later point in time. In other words, Section 1–52(16) applies to certain latent injuries." See also Misenheimer v. Burris, 360 N.C. 620, 623, 637 S.E.2d 173, 175-76 (2006) ("The language and the spirit of the statute suggest the legislature intended to allow an otherwise

16

qualified plaintiff to recover damages after the normal expiration of the statute of limitations if the injury was latent."). Here, no party has argued that Plaintiff's injuries should be considered "latent" for purposes of § 1-52(16).

Further, even if the statute of repose in § 1-52(16) does apply, it does not bar Plaintiff's claims. Defendants cite cases that reference statutes that set a deadline by which a claim must be filed. Section § 1-52(16), however, limits the time period in which a claim may *accrue*. Compare Byrant v. Adams, 116 N.C.App. 448, 456, 448 S.E.2d 832, 835 (1994) (considering N.C.G.S. § 1-50(6), applicable to products liability actions, which provides "no action…shall be brought more than six years after the date of initial purchase…"); Tipton v. Young Construction Co. v. Blue Ridge Structure Co., 116 N.C. App. 115, 117, 446 S.E.2d 603, 605 (1994) (considering N.C.G.S. § 44A-286, which provides that "[n]o action on a payment bond shall be commenced after" certain periods of time); Christie v. Hartley Constr., Inc., 367 N.C. 534, 539, 766 S.E.2d 283, 287 (2014) (considering N.C.G.S. § 1-50(a)(5)(a), which provides "[n]o action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later" of specified events); Stallings v. Gunter, 99 N.C.App. 710, 394 S.E.2d 212 (1990) (considering N.C.G.S. § 1-15(c), which provides that in no event shall a cause of action for malpractice "be commenced" after certain number of years from the date of defendant's last act).

Thus, the statute of repose in § 1-52(16) would bar Plaintiff's claims only if those claims accrued after January 27, 2020—that is, more than 10 years after the signing of the CVA on January 27, 2010. Except perhaps for Plaintiff's argument regarding the continuing wrong doctrine, neither party contends that Plaintiff's claims accrued after January 2020; Defendants argue that accrual occurred in January 2010 and Plaintiff argues that her claims accrued by March 2018.

Under either scenario, Plaintiff's claims would not be barred by the statute of repose. Therefore, the undersigned will recommend denial of the Motion to Dismiss on this basis.

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 3):

1. Be **DENIED AS MOOT** with respect to Defendants' request to dismiss claims against Crawford in her official capacity; and

2. Be **DENIED** with respect to Plaintiff's remaining claims.

Signed: January 14, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).